## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

TIMOTHY ANDERSON,           }
                            }
    Plaintiff,          }
                            }
    vs.                 }           CASE NO. CV 00-B-2212-S
                            }
JEFF COOPER,                }
                            }
    Defendant.          }

## MEMORANDUM OPINION

This case is currently before the court on defendant's Motion to Dismiss.  (Doc. 89.)[1]

This motion was filed immediately prior to trial.  On the morning of the trial, the court

informed the parties that the case was due to be dismissed.  This Opinion sets forth the

court's reasoning for dismissal.

This is an action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, Timothy

Anderson, alleges that his constitutional rights were violated during his arrest by Jefferson

County Sheriff's Deputies.  Plaintiff is presently incarcerated in the Limestone Correctional

Facility.  The remaining defendant in this action is Jefferson County Sheriff's Deputy Jeff

Cooper.[2]  In his Motion to Dismiss filed on September 21, 2004, defendant requests that the

_____

[1]      Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2]      The court notes that in his complaint and amended complaint, plaintiff also named Robert Cahill, Emory Anthony, Curt McKain, the Jefferson County Sheriff's Department, "other officers under the supervision of Curt McKain," "Jefferson County Employers," "Hospital Workers," and "Glock Gun Manufacture" [sic] as defendants in this action. However, plaintiff's claims against these defendants were dismissed on July 2, 2001. (Doc. 19.)

court dismiss this case because of plaintiff's prior conviction in an Alabama court based on the same events at issue in the case at bar. Upon consideration of the record and the relevant law, the court is of the opinion that defendant's Motion to Dismiss is due to be granted.

## I. <u>FACTUAL SUMMARY</u>

After leaving work on January 31, 2000, plaintiff stopped to order food at the Hong Kong Restaurant. (Doc. 1 at 12; Doc. 5 at 3.) On that date, defendant Cooper was working with the Vice and Narcotics Unit with several other deputies on a case involving plaintiff. (Doc. 29, Ex. 1 ¶ 3.) Deputy Curt McCune, the case agent on the investigation, received information from a confidential and reliable informant, who had previously given information leading to arrests and seizures of controlled substances, that plaintiff would be at a particular location at a particular time in possession of cocaine. (*Id.*) Cooper participated in surveillance of that location along with Deputies McCune, Robinson, Verbitski, Weatherly, and Liddell, as well as Sergeants Finley and Sharit. (*Id.*)

When plaintiff arrived, Cooper received a radio command to move into the restaurant parking lot where plaintiff was located. (Doc. 29, Ex. 1 ¶ 4.) Cooper was in an unmarked Chevrolet pickup truck along with Deputy John Weatherly.[3] (*Id.*) Plaintiff placed his food

---

Plaintiff also named Miss Maginess as a defendant in this action, but all claims against Miss Maginess were dismissed without prejudice on February 5, 2002, due to plaintiff's failure to supply the court with her correct address. (Doc. 43.)

Finally, the court notes that plaintiff also named Ned Whitehead as a defendant in this action, but all claims against Whitehead were dismissed on July 15, 2004. (Doc. 71.)

[3] Plaintiff misnamed defendant Weatherly in his complaint as "Weatherbee."

2

order.  (Doc. 1 at 12; Doc. 5 at 3; Doc. 29, Ex. 1 ¶ 5.)  When plaintiff pulled to the drive-through window to pay for his order, Cooper and other deputies moved their vehicles in order to block plaintiff's vehicle.  (Doc. 29, Ex. 1 ¶ 5.)  According to plaintiff, Cooper pulled in and blocked the front of plaintiff's vehicle while Deputy Weatherly blocked plaintiff from behind.  (Doc. 1 at 12.)  Cooper states that Deputies Liddell and Verbitski pulled up behind plaintiff's vehicle to block his escape from the rear while he and Weatherly pulled around in front of plaintiff's vehicle to block his escape from the front.  (Doc. 29, Ex. 1 ¶ 5; Ex. 5, ex. 1; Ex. 8, ex. 1; Doc. 35, Ex. 1.)

Cooper exited his vehicle wearing a black jacket with gold letters on it identifying him as a deputy sheriff and, according to defendant, announced in a loud voice several times, "Sheriff's Department.  Turn the vehicle off."  (Doc. 29, Ex. 1 ¶ 5; Ex. 5, ex. 1; Ex. 8, ex. 1; Doc. 35, Ex. 1.)  What happened after that point is disputed.  In his complaint, plaintiff alleges that Cooper "pull[ed] in and blocked me in with John Weatherbee [sic] behind me; got out of a unmarked truck and shot me in the face.  No warning shot or shot fired into tire, not even trucks touching in the accident claim that cause the shooting."  (Doc. 1 at 12.)  In an affidavit filed November 7, 2003, plaintiff states:

> Suddenly a man jumped out of the truck yelling.  As I moved to put the Expedition in park I saw him close one eye and extend his arms toward me.  I ducked, and that is the last thing I can recall until I woke up in the hospital.  I remember nothing else about what happened after I was shot.
>
> One thing that I will swear is that I never put the vehicle I was driving into reverse, squealed tires, or hit anybody else's vehicle.  I never drove

forward towards Officer Cooper and in fact, never made any move that could be considered threatening.  Jeff Cooper meant [to] kill me in cold blood on January 31, 2000.

(Doc. 62, Pl.'s Aff. at 2.)  Plaintiff believes his "vehicle rolled into [defendant's] pick-up truck after [plaintiff] was shot in the face."  (Doc. 62, Pl.'s Aff. at 2.)  Plaintiff submitted a second affidavit in which he discussed the photographs of the scene (Doc. 63, ex. G):

> [The photographs] show just as I have said all along that officer Cooper shot me from well to my right and I was not going toward him when he shot me.  I again swear that I never made any threatening gesture warranting Cooper shooting me in the head to kill me.  It just does not make sense to say I was spinning tires backwards and forwards when the damage [to the vehicles at the scene] is not consistent with that having occurred.

(Doc. 67, Ex. 1 at 2.)

Cooper and the other officers who were at the drive-through tell a different story. After Cooper exited the car and yelled for plaintiff to turn off the car, Cooper states that plaintiff immediately "put his vehicle in reverse spinning the tires which caused his vehicle to run into Deputy Liddell's vehicle behind him.  Then [plaintiff] quickly put his vehicle in drive and spun the wheels which caused the vehicle to move rapidly forward directly at me."

(Doc. 29, Ex. 1 ¶ 6.)  Cooper further states:

> In the span of a very short period of time, I fired one shot at [plaintiff] left handed as I jumped to my right out of the way of the vehicle [plaintiff] was driving just as it impacted my vehicle.  At the time I fired, I believed that my life was in danger because [plaintiff] was coming right at me.  Had I not jumped to avoid being hit, I would have been severely injured or killed as a result of being crushed between [plaintiff's] vehicle and my vehicle.

4

(Doc. 29, Ex. 1 ¶ 7.)  The reports filed by the other officers at the drive-through corroborate Cooper's story, as does Lieutenant Finley's memorandum for commendation of Cooper for his actions during the incident in question.  (Doc. 29, Ex. 5, ex.1; Ex. 6, ex. 2; Ex. 8, ex. 1; Doc. 35, Ex. 1.)[4]

While there is a dispute as to what transpired between the time Cooper exited his vehicle and the time that plaintiff was shot, it is undisputed that Cooper shot plaintiff in the face.  (Doc. 1 at 12; Doc. 5 at 5.)  The bullet struck the base of plaintiff's head and is lodged in the back of his neck.  (Doc. 5 at 5.)  No warning shot was fired and no shot was fired into a tire on plaintiff's car.  (Doc. 1 at 12.)  Cocaine, United States currency, and a pistol were found in plaintiff's vehicle.  (Doc. 29, Ex. 1 ¶ 8.)

Plaintiff was convicted by a jury in an Alabama court on December 7, 2000, of reckless endangerment[5] and trafficking in cocaine.  (Doc. 89, Ex. 3, Mem. Op. of Ala. Ct.

---

[4]    As the court has previously noted, several of the photos of the scene

show plaintiff's vehicle pointed in such a direction that the only reasonable inference to be made is that plaintiff was attempting to leave the "drive-thru" lane. (Doc. 63, Ex. G at 21-23, 25-26.)  Specifically, the middle photo on page twenty-one shows plaintiff's vehicle is clearly angled several feet away from the "drive-thru" window, a distance in which no person would be able to make physical contact with the "drive-thru" attendant. (Doc. 63, Ex. G at 21.)  Several photos also show that the tires on plaintiff's vehicle are turned away from the "drive-thru" window, indicating that plaintiff's vehicle was attempting to avoid Cooper's vehicle, escape from the scene, and avoid arrest.

(Doc. 70 at 19.)

[5]    Plaintiff was originally indicted for the attempted murder of Deputy Cooper.  (Doc. 89, Ex. 3, Mem. Op. of Ala. Ct. Crim. App. at 1 n.1.)

Crim. App. at 1.)  The reckless endangerment conviction came under an Alabama statute that makes it a Class A misdemeanor to "recklessly engage[] in conduct which creates a substantial risk of serious physical injury."  Ala. Code § 13A-6-24.  He received a sentence of twenty years' imprisonment for the trafficking charge, which was enhanced by five years due to a prior felony conviction.  *Anderson v. State*, No. CR-00-0957, slip. op. at 1 (Ala. Crim. App. Oct. 26, 2001).  Plaintiff was also sentenced to twelve months' imprisonment for the reckless endangerment charge.  *Id.*  The Alabama Court of Criminal Appeals, in its review of the case, found that "the State's evidence clearly demonstrated that Anderson drove straight at Deputy Cooper in a manner that could have killed him.  This action was clearly reckless and, therefore, sufficient to sustain his conviction for reckless endangerment . . . ."  *Id.* at 6.  That court affirmed the trial court's decision.  *Id.* at 9.  Plaintiff is presently serving a twenty-five year sentence in the custody of the Alabama Department of Corrections.  (Doc. 29, Ex. 1 ¶ 8.)

## II.  DISCUSSION

Plaintiff's remaining claim for relief is that Cooper violated his civil rights by using excessive force upon plaintiff by shooting him during his arrest.  Defendant argues that the doctrine of collateral estoppel and the United States Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), mandate dismissal of this case based on plaintiff's Alabama conviction.  (Doc. 89 at 4.)  Because defendant was not a party to plaintiff's criminal case, the doctrine of mutuality of estoppel found in Alabama collateral estoppel law does not allow

the court to invoke estoppel in this case.  *See Jones v. Blanton*, 644 So. 2d 882, 886 (Ala. 1994) ("[A] nonparty as to the first action may not use the prior judgment as determinative of the same issue in the second action.") (citing *Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 320-21 (1971)); *see also Vazquez v. Metro. Dade County*, 968 F.2d 1101, 1106 (11th Cir. 1992) ("[F]ederal courts considering whether to give preclusive effect to state court judgments must apply the State's law of collateral estoppel.")  However, the Supreme Court's decision in the *Heck* case must be considered to determine whether it is applicable to facts of the instant case.

In *Heck*, the Court considered the petition of a man convicted of manslaughter.  512 U.S. at 479.  After his conviction, he sued the prosecutors and a police investigator who had worked on his case, claiming that their allegedly unlawful actions led to his conviction.  *Id.* In the portion of the opinion relevant to the current case, the Court wrote:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487 (footnotes omitted).  Plaintiff does not contend that his Alabama conviction for reckless endangerment has been invalidated in any way.  Therefore, the issue before the court

is whether a judgment in plaintiff's favor on his excessive force claim would "necessarily imply the invalidity" of his reckless endangerment conviction.

Plaintiff claims that he did not drive towards defendant or the officers or threaten them in any way. (Doc. 1 at 12; Doc. 62, Pl.'s Aff. at 2; Doc. 67, Ex. 1 at 2.) Defendant and the other officers dispute this. (Doc. 29, Ex. 1 ¶¶ 6-7; Doc. 29, Ex. 5, ex.1; Ex. 6, ex. 2; Ex. 8, ex. 1; Doc. 35, Ex. 1.) The jury at plaintiff's trial in state court evidently believed the defendant's version of the facts: plaintiff's conviction for reckless endangerment means that the jury found that plaintiff's conduct during his encounter with defendant "create[d] a substantial risk of serious physical injury." Ala. Code § 13A-6-24. Such a finding can only mean that the jury found that plaintiff did indeed put defendant in danger of being struck by plaintiff's car. If this finding is inconsistent with a judgment for plaintiff on his excessive force allegation, then *Heck* mandates the dismissal of plaintiff's complaint.

The jury verdict in the Alabama court indicates that defendant would have been justified in fearing that plaintiff's conduct could seriously injure him. The Alabama Court of Criminal Appeals observed that "the State's evidence clearly demonstrated that Anderson drove straight at Deputy Cooper in a manner that could have killed him." *Anderson*, slip. op. at 6. Alabama law provides that "[a] peace officer is justified in using deadly force upon another person when and to the extent that he reasonably believes it necessary in order . . . [t]o defend himself or a third person from what he reasonably believes to be the use or

8

imminent use of deadly physical force."   Ala. Code § 13A-3-27(b)(2).[6]   Driving an automobile at a person qualifies as the use of "deadly physical force," and defendant's belief that plaintiff was attempting to use deadly force was reasonable.   Therefore, defendant, as a police officer, was justified in using deadly force against plaintiff.   This conclusion is the only reasonable one in light of the jury's conviction of plaintiff on the reckless endangerment charge.

As a result, any finding for plaintiff that defendant used excessive force during his arrest would necessarily imply the invalidity of plaintiff's conviction.   If defendant was justified in his use of deadly force, his firing of a single shot cannot be considered to be an excessive use of force.   To find otherwise would imply that he was not so justified, which would itself invalidate the jury's finding that plaintiff had recklessly endangered defendant and the other officers.   It is exactly this type of relitigation that *Heck* precludes.   Therefore, because plaintiff's excessive force allegations imply the invalidity of his state court conviction for reckless endangerment, they must be dismissed for failure to state a claim under § 1983.

---

[6]      The United States Supreme Court has implicitly approved of this type of statute. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.").

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the court is of the opinion that plaintiff's claim is due to be dismissed.   An Order granting defendant's Motion to Dismiss will be entered contemporaneously with this Opinion.

**DONE** this the 25th day of March, 2005.

_Sharon Lovelace Blackburn_

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE